E.D. Cunningham of the Federal Defender's Office on behalf of Mr. Manuel. You may want to speak up. Yes, Your Honor. This guy from Idaho can't hear you. Thank you, Your Honor. This Court should reverse for two reasons. First, the officers lacked probable cause to arrest Manuel based on his mere proximity to contraband concealed in somebody else's truck. And second, the Court erroneously precluded evidence critical to impeach Officer Hogan, whose testimony was the only evidence that the bullets in Count 2 were found in Manuel's pocket. The defense theory was that the officers really found the bullets somewhere else in the truck. As the jury knew, the officers asked for consent to search the truck only after they recognized Manuel. The officers... Consent. From the driver. Yes. The officers' failure to investigate Terry after she claimed ownership of the gun was strong evidence supporting the defense theory that the officers did not care who was really in possession of the gun. They just wanted to pin something on Manuel. Just a second. I'm having a little trouble with the link-up. The hearsay evidence, well, you say it's not hearsay evidence... Because it wasn't admitted for the truth of the matter. But at trial, the issue was the gun, right? And that was one of the issues. I mean, he was acquitted, but that was one of the issues. Who owns the gun? So the statement, I own the gun, sounds like pretty good hearsay. Well, Your Honor... And there's a tangential possibility at that time that it relates to the officers' state of mind and not paying any attention to that statement, I guess. I mean, it's a difficult link-up. So the district court says it's hearsay because we're talking about the gun here, and therefore I reject it. So what's your argument, that he didn't go through a proper balancing test to say, well, that tangential reason for admission is not important and confusion, he didn't say that? Your Honor, I have several responses to that. Long questions, but probably several answers. First of all, counsel explained at length that it was not offered to prove the truth of the matter asserted and explained that it was offered to provide context for the failure to investigate. And as a matter of law, if evidence is not offered for the truth of the matter asserted, it is not hearsay, and that is clear under Moran at page 1013 and Boulware in notes. Moran, excuse me, and Boulware. You kind of know I understand that. I want to know if the problem is that there were two possible reasons for admission, one hearsay, one not hearsay, and the district judge rejected it as hearsay and your problem is he didn't do a balancing test. If that's not your problem, then say that's not your problem. Well, the district court didn't cite 403, and therefore this court's review is de novo. But if the district court had a concern or the government had a concern that the jury would use it for an improper purpose, the remedy is to give a limiting instruction, and also Moran and Boulware make that clear. Of course nobody asked for that. Exactly, and it would have been the government's burden to do that. Jurors are presumed to follow instructions, as this court knows, and there are many cases out there that say when there's a possibility the jurors might use it for an improper purpose, that is the way to alleviate that problem. And again, Moran, 1013. Oh, excuse me, no, Boulware, as explained on OB-14, and Mende is a case I didn't cite, 43 F. 3rd, 1298, 1302. Let me just get the link up here. Your argument is because he paid no attention to her statement about the gun, therefore that demonstrates his bias, and that demonstrates that he was not talking truthfully when he got on the stand. Yes, Your Honor. Have I got the link up there? Yes, Your Honor. I mean, a reasonable officer would investigate if someone claims ownership of the gun, and he did not do that. Now, there's a person in the back seat. The gun's in the glove compartment. Officer says she was just scared and didn't want to run afoul of these guys, so there you go. Well, Your Honor. I'm not sure a reasonable person, I don't know what the answer is. I'm not sure it's obvious that the officer was unreasonable. Well, that's something that the jury had a right to decide. This was a question of a credibility assessment, and credibility assessments are uniquely the province of the jury. The jury had some other reasons to doubt the credibility of the officer. For example, he said he couldn't feel the bullets in the tissue, and they had no video of the search. And so there were some other reasons to doubt, but this would have been important evidence of purposely ignoring evidence that it was someone else's gun. Yes, Your Honor. Who offered the evidence? The defense offered the evidence. Right. And it was rejected as hearsay. It was rejected as hearsay. Now, why would the government ask for a limiting instruction? Well, they didn't get to that point, but if there was a concern about that, if, as Judge Rustani is suggesting, maybe that was the district court's concern, a limiting instruction would have remedied that concern, and the district court could have done that sua sponte or the government could have requested it. The defendant was acquitted of the charge for which the testimony would have said he should have been acquitted anyway, correct? Your Honor, he was acquitted of gun possession, and our position is he . . . I mean, it seems to me that he was acquitted of the, if you would, hearsay stuff, and therefore, so in order to make your argument or make it work, I've got to suggest that any other calculation of what it was really . . . I mean, I made these objections as a lawyer all the time. My worry, though I wanted it in for a different reason, I always had to have a different reason, because if I hit the very reason, the judge would throw it out. So I had to come up with these different reasons. Now you're suggesting to me that because the lawyer said a different reason, even though it didn't seem at the time like that reason, the judge was wrong. Your Honor, he stated . . . I mean . . . He stated a reason that it was not offered for the truth of the matter asserted, and it was actually very critical for the second count. It wasn't about the gun. As Your Honor points out, they had a lot of evidence that he wasn't in possession of the gun. The problem was, according to Hogan, the bullets were found in the pocket of Manuel. So to beat that charge, his only real hope was to convince the jury that Hogan was not telling the truth. And in closing argument, which is another important consideration here, the prosecutor said the defense wants you to think Officer Hogan is lying, and you have no reason to believe that he's lying. So again, that points out that this was very harmful error. Also, in closing, the prosecutor discredited the alternative theory that maybe Sampson or Terry handed the tissue to Manuel and said there were no furtive movements. So really, this case on count two came down to officer credibility, and the defense needed everything in its arsenal to attack that credibility. And failing to investigate after a witness claims ownership of the gun would have been a powerful indictment of that investigation. And I would like to reserve the rest of my time if that's okay. Well, I want to ask you one more. Yes, Your Honor. The bottom line is we're at harmlessness. No, Your Honor, it can't be harmless. Why can it not be harmless? Because it involves the jury's assessment of credibility. Frankly, when I have all kinds of other evidence for the jury to assess that, is there really an error that isn't harmless? Your Honor, there was no other evidence that he possessed these bullets other than Officer Hogan's testimony, and this was something that would be crucial to indict Officer Hogan's credibility on that point. And if I may reserve the rest of my time. Thank you. Good morning. My name is Tom Simon, and I was the Assistant United States Attorney assigned to the district court proceedings. Regarding the motion to suppress, the district court had sufficient evidence to establish that the Salt River police officers had probable cause to arrest this defendant for an open container of alcohol that was found directly under the defendant's seat. Your Honor, the facts and circumstances surrounding that overall probable cause determination was that the alcohol was found directly under the defendant's seat. It was easily accessible from the front. It was facing forward, at least the mouth was facing forward. It was partially consumed, and it was cold to the touch. Well, the argument is that it was equally accessible to the person in the back and to the driver. That was one of the arguments, yes, Your Honor. Do we know very much about this truck? Like can you reach under the seat? Is there a blockage? Do we know very much about this? There were photographs, Your Honor, taken at the scene. Unfortunately, there were insufficient photographs taken of where the bottle was placed underneath the seat as well as the bottle had been disregarded. The testimony was it was in the front of the front seat, easily accessible, right? Correct. Then we have the officer saying, well, he thought it could be accessed from the back, but then he thought it couldn't because there was debris in the way. It was kind of some equivocal testimony on the ability to access it from the back, correct? Yes, and unfortunately, because of the recreation, and I had asked because the bottle had been discarded and there weren't sufficient photographs taken of the bottle where it was located under the seat at the time, I asked for this recreation to get a bottle of like size and place it under the seat. Unfortunately, also, when they found the vehicle, it had been essentially cleaned up. It had been detailed. So the debris was gone, and when the officer was being referred to these photographs that there was no longer the debris under the seat, he was responding to the movement of the bottle under the seat at the time as opposed to actually referring to at the specific time that the debris was under the seat. I'd like to ask about the second part. May I? You bet. Okay. I mean, I was going to say your counsel didn't talk much about this first part. Maybe it was our fault, but I think the second question is very interesting. Yeah. I mean, it seemed to me that they made the clear argument that we're not offering this statement, it was my gun for the truth of the matter. We're offering it to show that the policeman was biased and could have planted this evidence. So the district judge didn't really deal with that argument, did he? He did not do a balancing test with regard to relevance. He did rule on hearsay. He took it as hearsay. Well, what are we supposed to do since that's arguably a good reason for admission? I mean, you have two good reasons. You have two reasons for admission. Well, you have two reasons this thing could be admitted. One is no good because it's hearsay and the district judge is correct. The second is it's not hearsay. It goes to its credibility. And when you have two reasons for admission and one of them is good, then you've got to do something, correct? Yes, Your Honor. Okay, so the district judge erred in not doing something and we're supposed to do something about this or is there some other out? Well, I would submit, Your Honor, that this court can review the matter, as the defense counsel noted on a de novo review, and I attempted at sidebar during the course of that conversation to attempt to advise the court that this was an inherently unreliable statement. I didn't do a very good job in my brief to advise the court of the facts, but Sheila Terry had initially said, that's not my gun, I don't want to think about it. And that was later when she was separated, when she brought this to attention of Officer Hogan, Detective Hogan, and said, well, it's my gun. And Hogan incredulously asked her, whose gun is it? Well, it's not Sean Samson's. And then he asked, well, whose gun was it? She says, well, I'm afraid of these guys. I don't want to get involved. And essentially she had convinced Hogan at the time that it was not her gun. The thought of further investigation with regard to Sheila Terry, with regard to DNA and fingerprints, all the evidence was submitted to the crime lab. There were no fingerprints found in the gun, the bullets found in the gun. There was some DNA, but not enough to do any kind of DNA profiling. The bullets found in the defendant's pocket, there was on one bullet, some one loci, a very minor DNA profile, and it indicated it was a female marker. But other than that, there was nothing to compare it to. So even if they had taken fingerprints or DNA from Lisa Terry, which Hogan was convinced that she was not involved because of her statements, it would not have made a difference. So your argument is, I made an argument to the judge that this was of little probative value, and therefore he kind of did a balancing test? Your Honor. He made the argument? No. I don't believe that he, in the course of his review, he did not believe that the statement was, well, he believed the statement was being offered for the truth of the matter asserted. And based upon his review of the matter, determined that it was hearsay and sustained the objection on that ground. He did not do a balancing test under 403. I would offer to the Court, as the defense has noted, that if the Court can consider this on a de novo review, that the Court can do a balancing test under 403 and find that that statement was inherently unreliable and should not have been admitted. Probative value is far outweighed by the prejudicial effect of the government. Supposing reliable, then where do we go? Pardon me, Your Honor? Supposing we find it reliable. Supposing we don't agree with you, as the district court did, then where do we go? Well, then you can look at the admission of that, whether that would have changed things. Do you think that this was harmless? The defendant was acquitted with regard to the good charge. But not as to the other charge. That's what she kept saying to me. Every time I tried to give her that out, she didn't want it. I mean, what is the harmlessness of this? What other evidence do we have that is so overwhelming that this would be harmless? Your Honor, the . . . and, again, the credibility is to the assessment of the trier of fact, but the defendant had the bullets found in his pocket. And if the defense is saying that somehow Sean Sampson and Sheila Terry had conspired to give him these bullets, this person was a convicted felon. He was a violent person known in the community to carry weapons. So I would submit that from facts and circumstances, there's just simply no way that the jury would have found that Sheila Terry or Sean Sampson somehow conspired to provide him with the bullets. He would have accepted those and taken them into his pocket, a convicted felon. Was there any argument about the officers throwing away the bottle without fingerprinting it or DNA testing it? There was a statement, a reason which they provided. It wasn't a very good reason, frankly. Was there any argument about the officers failed to take pictures at the scene? Another failure on their part. Your Honor, there's no question about it. Was there any argument about the officers failing to take DNA from Sampson? No. Any argument about them failing to take DNA or fingerprints from the girlfriend? Well, I'm sorry, Your Honor. I mean, I'm just trying to come up with arguments that may make this harmless. I didn't find them. Well, the defense asked those questions of the officers. They went through a litany of those things during the course of trial and argued at length during the course of the final argument that these things were not done. I've had a number of cases. Everybody argues there's no fingerprints taken and no DNA. They find the stuff in the guy's pocket, and he's convicted. But all the evidence came in. So your problem is this evidence didn't come in and was that harmless nonetheless. That's what we're trying to probe just a little bit. I understand. How about the necessary factual findings under Rule 32? Your Honor, the court addressed the reference to Big Dave and the defendant's association with the Warrior Society. All the court did is say, I don't want to address this question. We'll just put in the PSR that it was in the prison records, and that's it. And then after saying, all I want to deal with is putting it in the prison records, he makes a part of his supervised release all to do with it, even though all he did was just put it over there in the PSR as only the prison says anything about it. That's what their issue is. If he wanted to make a supervised release condition based on this stuff, he should have said, I reject what you've said, and this is right, and we're going to do it. And then the rejection would be in front of us. But without doing anything, he nonetheless applies stuff from implying that he's a gang person and puts him with conditions that imply it. That's their argument, and I didn't know whether the government quite addressed it. Well, if I might, Your Honor, to place it in context, the pre-sentence report had been available to the defense as well as the prosecution for at least a month prior to sentencing, and all those terms and conditions were set forth specifically in that report under recommended terms. The pre-sentence officer had indicated that it was necessary to oversee the defendant's compliance and make sure that he was complying with his substance abuse treatment, that he was behaving in the community, and as a deterrent for further criminal activity. Are you saying that there was no suggestion in the pre-sentence report that this was based on gang activity? Pardon me, Your Honor? Are you saying that in the pre-sentence report the need for it wasn't linked to gang activity? And I think that the pre-sentence officer was looking at the overall circumstances of what the defendant was in the community, and these were the concerns and they identified those concerns. I don't understand your answer. Are you saying that the pre-sentence report did not say that the supervised release provision was because he was a gang member? Did it say it or not say it? It wasn't specific in the recommended. In other words, in that particular provision of the pre-sentence report, basically the pre-sentence officer had indicated that this was the reason, these overall reasons of the totality of the report, that it was necessary for these particular provisions and identified them. Did it refer to gang activity? It did in the report, yes, Your Honor. So that was certainly something that the pre-sentence officer would have taken into consideration. And so I agree with that. But it was on the totality of the report. And the court then, and yes, he said because of the affiliation, but also because he wanted to monitor the defendant's actions in the community. And that was based upon, again, the totality. So I think one could bifurcate the two and fine for the second as well as the first. All right. I think you have some time. Your Honor, Your Honor, first to address the harmlessness issue, to restate the error was not harmless because it could have impacted credibility, and this would have been the strongest way to indict the officer's credibility. As Your Honor pointed out, there was some evidence of slobby police work, not keeping the bottle, things of that nature. But that had to do with probable cause. That wasn't something germane to the jury's consideration. This was evidence of a purposefully ignoring someone's statement that the gun is theirs and not investigating them. Can we sit here and de novo do a balancing? Your Honor, under Beware and Moran, the issue is reviewed de novo. I believe the prejudicial or confusing nature of the statement is not apparent from the record because a limiting instruction could have addressed that. So there's really rule 403 is a rule of inclusion. It is rarely, rarely applied. And that is Mendi 43 F. 3rd 1298. The facts must be resolved in the light most favorable to the proponent under the law. But are you saying that because facts must be resolved by the district court that we can't do this de novo? I'm saying if you do engage in de novo review, you must view the facts in the light most favorable to the defendant, not the prosecution. And here, 403 law dictates that this evidence should come in because it was important to the defense and any confusion could have been addressed by a limiting instruction. And what opposing... I gave you 30 seconds extra. Thank you very much for your time. Thank you, Your Honor.
judges: Restani, Schroeder, Smith